WASHINGTON,
*March*,
1838.

WILLIAM FOSTER v. GEORGE W. COLLAMER.

It is a general rule, that if a creditor discharge his debtor from arrest on execution, it is equivalent to a discharge from imprisonment, and virtually discharges the debt.

But in order to bring a case within this rule, the arrest must be unequivocal, clearly made out, and must be for the purpose simply of executing the process.

Therefore, when an officer, holding an execution, called upon the debtor, who informed him that he should not pay the debt, but be committed, unless the creditor controlled the execution, and the officer told the debtor that the creditor was at M. the place where the jail was situated, upon which the debtor expressed a wish to see him, and the officer told the debtor to get into his wagon and go with him to M. when he should commit him, if no arrangement was made with the creditor, whereupon they started for M. and, on their way, met the creditor, who took the debtor from the officer, notwithstanding the officer's remonstrance against his doing so, unless the fees were paid ;—Held, that this was no arrest, and did not discharge the debtor, and that a subsequent arrest and commitment were legal and valid.

If a debtor, in such case, be released at his own request, or by mutual assent, it is no discharge of the debt.

Where a judgment is rendered by the county court, under a rule that such judgment is to be reversed by this court, in a certain event ;—such rule, though binding upon the parties, is not necessarily imperative upon this court; and where the case turns upon a point, not anticipated when the rule was made, and, in the opinion of the court, requires the further action of a jury, it will be remanded for a new trial.

THIS case was heard upon the following bill of exceptions, viz ;—

This was a writ of *audita querela*, brought to set aside an execution in favor of defendant, against plaintiff, dated 2d of September, 1835, on which plaintiff was committed to jail.

Plea, the general issue, and trial by jury.

The plaintiff gave evidence tending to show, that the defendant recovered the judgment, on which the execution issued and took out a former execution, dated the 20th of July, 1835, and put the same into the hands of an officer, to levy and collect, on the third of September, 1835. The officer testified, that, about one week before the execution expired, he went to plaintiff, who agreed to meet him at the place of defendant's residence in Barre, on the last day of the life of the execution, which he did. The plaintiff then informed him that he should not pay it, but be committed, unless the defendant controlled the execution. The defen-

dant was at Montpelier, and plaintiff expressed a wish to see him. The officer told the plaintiff to get into his wagon and go with him to Montpelier, when he should commit him to jail, unless he made some other arrangement with defendant. The officer said he considered him, and treated him as a prisoner under his control. On their way to Montpelier, they met defendant and he asked plaintiff where he was going,—who replied, " to jail on your execution,"—defendant said that was contrary to his orders, and told plaintiff to get into his wagon, and took him back to Barre, notwithstanding the officer remonstrated against his taking plaintiff away from him, saying, " if you take away my prisoner, I would be glad you would pay my fees,"—which Collamer did not do.

There was other testimony, on the part of the plaintiff, tending to show, that after plaintiff arrived at defendant's store, and found defendant gone to Montpelier, the officer told plaintiff he must get into his wagon and go to Montpelier, where they should probably find Collamer, and if they arranged the matter, the plaintiff might ride back in his wagon, otherwise he should commit him. The defendant contended that this testimony had no tendency to prove, that the officer arrested plaintiff on the execution ; but the court held otherwise, and charged the jury that if the officer so far interfered with the plaintiff as to control his motions, and did actually deprive him of his liberty, and had him in actual custody on said execution, conveying him to jail, with the purpose of committing him, and Collamer discharged him from the officer, and, afterwards, took out the execution, on which plaintiff was committed, the plaintiff was entitled to recover. But if, at the time they left Barre, the primary object was to see defendant, and the question of commitment was to be determined after they should have searched for and found defendant, and that the plaintiff had not then been actually deprived of his liberty, the defendant would be entitled to a verdict, to which decision and charge the defendant excepted. The jury having returned a verdict for the plaintiff, it was accepted under a rule, that if the supreme court should be of opinion that the case ought not to have been submitted to the jury, they should enter judgment for the defendant.

WASHINGTON,
    *March,*
    1838.
─────────
    Foster
      *v.*
   Collamer.

*W. Upham* and *N. Kinsman,* for defendant.

1. There was no legal arrest of the plaintiff on the defendant's execution.

The case shows that the plaintiff's object was to see the defendant, and arrange the business with him, and thereby prevent an arrest and commitment.

As to what will constitute an arrest, see the following authorities ;—

Harrison's Index, 1979. 1 C. & P. 153. R. & M. 26. *George* v. *Radford,* 3 C. & P. 464. M. & M. 244. *Barry* v. *Adamson,* 6 B. & C. 528. 2 C. & P. 503.

Words, only, do not make an arrest,—and, therefore, if a bailiff says, "I arrest you," and does not touch the defendant, it is no arrest. 4 Comyn's Dig. 128, (C. 12.)

There was an arrangement between the officer and the plaintiff, by which the arrest was not to take place, except upon a contingency, which did not occur.

2. If the plaintiff was arrested on the execution and discharged from custody, it was done by his *consent,* and he may be again arrested for the same debt. *Brown* v. *Getchell et al.* 11 Mass. R. 11.

Where a defendant is let out of custody at his own request, in order that he may attend to his business, he may again be arrested on the same process. 1 Chit. R. 11. *Puckford* v. *Maxwell,* 6 Term R. 52. 1 Tidd's Pr. 184, 185.

A second arrest must be vexatious in order to induce the court to discharge the defendant. 1 Chitty's R. 276.

It has been the practice, ever since the organization of the government, for officers to call on defendants in execution, and inform them that they must be committed, and to accompany them to the plaintiff, or his attorney, to see if any delay could be granted, or any arrangement made to prevent a commitment, and it has never been considered or understood that granting delay or taking back the execution, at the *request* of the judgment debtor would discharge the debtor, or prevent a second arrest upon the same, or an alias execution.

*L. B. Peck,* for plaintiff.

1. The evidence has a legal tendency to show an arrest. The officer did every thing that could be done to constitute

an arrest, short of laying his hands on the plaintiff. Had the plaintiff made his escape from the wagon and left the country, would not the officer be liable in an action on the case for the escape? *Gold* v. *Bissell,* 1 Wendell, 210. *Russen* v. *Lucas,* 1 Car. & Payne, 153. Bull. N. P. 62.

2. The principle is as old as the common law itself, that when a judgment debtor has been taken in execution, and discharged by the creditor's consent, he cannot be again taken on that execution, or upon any other which may be issued upon that judgment. The arrest and discharge extinguish the debt, the arrest being considered as a satisfaction at common law. 1 Term R. 557. 6 id. 525. 7 id. 416. 2 East, 243. 7 id. 330. 14 Mass. R.443. 5 Johns. R. 364. 16 do. 181.

The arrest of the plaintiff, therefore, on the alias execution was wholly unauthorized. *Lathrop* v. *Briggs,* 8 Cowen. 171. *Ransom* v. *Keyes,* 9 Cowen. 128. *Loomis* v. *Storrs,* 4 Conn. R. 440. The moment a debtor is arrested on an execution, he is in the custody of the law and charged in execution. A subsequent commitment of the debtor to prison does not vary the *legal* effect of the arrest.

The opinion of the court was delivered by

PHELPS, J.—As a general rule, if the creditor discharge his debtor from arrest, it is equivalent to a discharge from imprisonment, and virtually discharges the debt. The reason is, that the law will not permit its process to be trifled with, or perverted to oppressive or vexatious purposes.

But in order to bring a case within this rule, the arrest must be unequivocal, clearly made out, and must be for the purpose simply of executing the process. In this instance the arrest, if it can be called such, was provisional merely, and with the intent on the part of the officer to execute the process, upon a contingency only. The first object on the part of the officer, in exerting his authority over the debtor, was to bring about an interview between the debtor and creditor, for the purpose of an arrangement, which might supercede the necessity of executing the process, and the debtor accompanied the officer evidently with the same purpose. It is true, that the officer avowed his intention to commit the debtor, in case no such arrangement was effected. But so long as the proceeding of the officer was with

a view to an adjustment between the parties, it can hardly be regarded, in strictness, as the execution of the process. The intent and purpose of the proceeding is all-important. If the officer insist upon the debtor's accompanying him to the creditor, this is no arrest *in the execution of process.* If he take him into custody for the purpose of taking him to gaol, it is an arrest. When, therefore, the creditor in this instance forbade the commitment of the debtor, he did no more than was contemplated in the outset, and the contingency happened, upon which both the officer and debtor understood the arrest should be waived. It is extremely doubtful, in this view of the subject, whether the proceeding of the officer can be deemed, in strictness, an arrest.

But another consideration is, in our view, decisive. In our opinion, the consent of the debtor to his discharge is to be inferred. If he were discharged at his own request, or by mutual assent, there can be nothing vexatious or oppressive in the proceeding, and we see no good reason why, in such case, the debt should be treated as satisfied, or the creditor debarred of a future remedy.

We think it would not be for the interest of debtors, nor, indeed, for that of the creditor, to hold otherwise. The law allows to the parties a certain period within which to satisfy the execution before the return day. It would be a hardship upon all, if the officer were not permitted to indulge the debtor during this period. We are, therefore, of opinion that the complainant in this case is not entitled to be relieved, if a jury should find that the commitment was countermanded, or at his request.

The judgment of the county court is, therefore, reversed. There is a rule, however, in the case authorizing a judgment in chief for the defendant. These rules are, indeed, binding upon the parties, but not necessarily imperative upon the court. Where the state of the case renders such a judgment, as the rule contemplates, proper, the court will render it. But if, at the same time, the case turns upon points not anticipated when the rule is made, and, in the opinion of the court, requires the further action of a jury, they will remand it for a new trial. This cause is remanded accordingly.

COLLAMER, J., being related to one of the parties, did not sit in this case.