Willard *v.* Lull.

—⋅⋅►▄⊚⊃◄⋅⋅—

## Ammi Willard *v.* Joel Lull.

Whether a levy, where the execution and return are recorded in the town clerk's office within the five months, but are not returned to the office of the clerk of the court and there recorded until after the expiration of the five months, is sufficient to preserve the priority of lien created by the attachment upon the original writ, *quære*.

But a levy takes effect from the time when the execution and return are recorded in the town clerk's office; and an attachment of the land subsequent to that time will not supersede the levy, notwithstanding the execution and return of the levy are not returned to the county clerk's office until after such attachment is made, and after the five months from the rendition of the judgment, on which the levy is made, have expired.

When the body of a debtor is committed upon execution, all liens created by the attachment are lost; and if the creditor, in pursuance of the statute, subsequently release the body of the debtor, and take execution against his goods and estate, it only gives him a new and independent remedy, and does not revive any lien created by the original attachment.

Willard *v.* Lull.

TRESPASS ON THE CASE against the defendant, as sheriff of the county of Windsor, for the default of his deputy, George C. Pratt, in not seasonably returning an execution in favor of the plaintiff against one Montague, which was levied on land. Plea, the general issue, and trial by jury, March Term, 1846,—REDFIELD, J., presiding.

On trial it appeared, that the plaintiff took out a writ in his favor against Montague and others, dated October 19, 1840, and returnable to the November Term of Windsor county court, 1840, which was on the same day served by attaching the town of Bridgewater as the estate of Montague. Judgment was rendered in this suit against the defendants in May Term, 1842, and execution issued dated June 20, 1842, and returnable at the next term of the court. This execution was levied by Pratt, the defendant's deputy, on certain parcels of land in Bridgewater, as the estate of Montague, on the 28th of July, 1842, and of the execution, levy, and proceedings therein, Pratt, on the 19th day of November, 1842, made return into the town clerk's office in Bridgewater, and caused the same to be there recorded; but he did not return the execution and levy into the office of the clerk of the court to be there recorded, until the 29th day of the same November, which was the first day of the November Term of the court. On the 12th day of November, 1841, one Hutchinson prayed out his writ against Montague, returnable to the November Term, 1841, of Windsor county court, and on the same day caused the town of Bridgewater to be thereby attached, as the estate of Montague. In this suit judgment was rendered against Montague, November Term, 1841; and by an *alias* execution upon this judgment, dated September 1, 1842, Montague was, on the 16th day of the same September, committed to jail. On the 21st of April, 1843, Hutchinson released the body of Montague from imprisonment, and took out a *pluries* execution on his judgment against the property of Montague, and, on the 26th of April, 1843, caused it to be levied on two of the parcels of estate covered by the plaintiff's levy above mentioned, and of this execution and levy return was made into the offices of the town clerk and county clerk on the 20th of June, 1843. On the 23d of November, 1842, one Raymond took out a writ in his favor against Montague, returnable to the May Term, 1843, of said court, and on the same day

Willard *v.* Lull.

caused said town to be thereby attached as the estate of Montague. In this suit judgment was rendered against Montague at the November Term, 1843; and the execution issued thereon, dated March 21, 1844, was, on the 11th of April, 1844, levied on a portion of the estate embraced in the plaintiff's levy aforesaid, including the two parcels levied on by Hutchinson; and the execution and levy were returned into the offices of the town clerk and county clerk on the 12th of April, 1844.

Upon these facts the court decided, that, by the neglect of the officer to return the plaintiff's execution against Montague, with his levy of the same, into the clerk's office within five calendar months after the rendition of the judgment, the plaintiff had lost the lien created by the attachment in that suit; and directed a verdict to be returned for the plaintiff for the value of such portions of the estate as had been levied on by Raymond and Hutchinson.

Verdict for plaintiff. Exceptions by defendant.

*C. Coolidge* and *A. Tracy* for defendant.

1. It is not necessary to the preservation of a lien created by attachment of real estate, that the execution, when made returnable at the next term of the court, should be returned into the office of the court from which it issued within five calendar months from the rendition of the judgment. The objects of the statute are fully accomplished, if the execution and return are recorded in the town clerk's office within the five months. *Skinner* v. *McDaniel,* 5 Vt. 539.

2. But if the plaintiff lost the lien created by his attachment, his levy was nevertheless good. His execution was levied November 19, 1842. The attachment of Raymond was not made until the 23d of November; and the plaintiff's levy was perfected, as against that. *Haywood* v. *Hildreth,* 9 Mass. 393. The lien acquired by Hutchinson was lost on the first of September, 1842, by the commitment of the debtor upon his execution. *Loomis* v. *Storrs,* 4 Conn. 440.

*O. P. Chandler,* for plaintiff, relied upon Rev. St., chap. 28, sec. 19, 20.

Willard *v.* Lull.

The opinion of the court was delivered by

REDFIELD, J. In the county court this case was decided upon the question, whether the levy was sufficient to connect it with the lien created by the attachment. In regard to that question, there certainly has been a very general opinion prevalent among the profession in consonance with the decision of the court below. Intimations to that effect will be found in some of the opinions of this court, but no decision has certainly gone that length within our present recollection.

But two other subordinate questions have been presented during the argument in this court, which it seems necessary to consider.

1. Was the attachment of Raymond, made on the 23d of November, prior in point of time to the plaintiff's *levy,* which was completed on the 19th of the same month, except the return of the process into the office of the clerk of the court, from which it issued, and causing it there to be recorded? This may be necessary to perfect the levy, and, for the purpose of connecting the lien with the levy, may be required to be executed within the five months. But as a levy is not a single act, but consists of a succession of acts, it must, for purposes of notice and of creating a lien, be referred to some single point of time. Why it should be referred to the last moment of time, more than the first, it is not easy to perceive. In such cases attachments and levies are more commonly dated from that act which creates the notice, which is the leaving the copy in the office of the town clerk. At this point of time the levy was complete, for all purposes of notice, although not perhaps so far completed as to pass the title to the land, and so not perhaps within the statute requiring the levy to be made in five months. But the passing the title is not the point. Raymond's attachment had no such effect, of course. We think, then, to say that Raymond's attachment, which at most was a mere *caveat,* shall supersede the plaintiff's prior levy, which was *complete* for all purposes of notice, would require a degree of refinement, which, to common minds, would savor not a little of absurdity, when, by the express terms of the statute,— Rev. St. 245, § 50,—leaving the copy of the execution created a lien for five months.

2. It is necessary to consider whether Hutchinson's lien was lost by the commitment. To us it seems almost self-evident, that it was

Willard *v.* Lull.

so lost. It was no doubt so considered by Hutchinson, at the time of the commitment, as the prior liens then were sufficient to cover the entire estate.

By the common law the body, when once arrested, is a *full* satisfaction of the debt. It is the same by our law, unless the body is discharged, with a promise to pay the debt on the part of the debtor ; *Foster* v. *Collamer*, 10 Vt. 466 ; or unless the release is by operation of law. And at all events, the body, while held in confinement, is esteemed a *temporary satisfaction* of the debt. It does not operate as a release of collateral remedies, which are so far perfected as not to depend upon any proceedings under the execution for their support. If the receiptor is fixed in his liability for property, the plaintiff may commit the debtor, and still pursue the receipt man ; so, too, he may pursue bail for costs, for appeal, or review, and still hold the body of his debtor. But was it ever supposed that the creditor could commit his debtor, return his execution, and then take an *alias* execution and charge property attached upon the writ, or take other property ? Clearly not, until he releases the body. And when he releases the body, if it were not for the statute, he would have *no farther remedy ;* and with that, he can only have the remedy *which the statute gives,*—and this, we think, is clearly nothing more than a *new* and *independent remedy,* against goods and estate which he shall thereafter seize,—not such as he may have before created a lien upon. All *former* liens, not perfected upon goods or lands, are *abandoned* and *lost* by the commitment of the body. We see no objection to the levy being held good, as an independent levy, and bad as connecting the title with the lien,—which it is not necessary here to decide.

Judgment reversed and case remanded.