JOHN VESANEN

*vs.*

CONRAD POHJOLA AND SNOW SHIPYARDS, INC., TRUSTEE.

Knox. Opinion, March 15, 1944.

*Frank F. Harding*, for the plaintiff.

*C. S. Roberts*,

*A. Alan Grossman*, for the defendants.

S<small>ITTING</small>: S<small>TURGIS</small>, C. J., T<small>HAXTER</small>, H<small>UDSON</small>, M<small>ANSER</small>, M<small>URCHIE</small>, C<small>HAPMAN</small>, JJ.

M<small>URCHIE</small>, J., dissenting.

T<small>HAXTER</small>, J.   This action of debt on a judgment was heard on an agreed statement of facts by the presiding justice who ordered judgment for the plaintiff. The case is before us on exceptions of the principal defendant.

The judgment was recovered at the November Term, 1941, of the Superior Court within and for the County of Knox. An execution was duly issued which ran against the goods and es-

tate, and against the body of the defendant. On this he was arrested and imprisoned. On his promise to the plaintiff to pay the amount due on the judgment in weekly installments of five dollars, he was released on the plaintiff's oral direction given to the jailer.

The defendant now claims that, because the direction to the jailer was not in writing, as provided by Rev. Stat. 1930, Ch. 124, Sec. 60, the judgment was satisfied by reason of the arrest and subsequent discharge from custody.

The statutory provision in question reads as follows:

"A creditor may discharge his debtor from arrest, or imprisonment on execution, by giving to the officer or jailer having him in custody written permission to go at large; with the same effect as a discharge or disclosure."

Section 61 provides as follows:

"A certificate of a discharge on execution in any of the modes hereby authorized, and of the cause of it, shall, at any time, at the creditor's request, be indorsed on the execution by the officer who had such debtor in custody; and if it is before the return day of the execution, it may still be levied on his property; if after, it may be renewed like other executions, against his property only; and the judgment may be revived or kept in force, with said execution, as judgments in other cases."

The argument of the defendant is that at common law the arrest of a debtor on an execution, or at least his arrest followed by his discharge, was a satisfaction of the judgment and that this common law rule is still in force except in so far as it may have been modified by statute. Consequently, it is contended, this plaintiff could have preserved his right to sue on the judgment only by a written permission given to the jailer that the debtor be discharged. If the rule were otherwise what, it is argued, is the purpose of providing in section 61 that, if the

statutory provision is followed, the judgment may be kept in force?

It is hardly necessary to point out the injustice which is done, if the defendant, securing his release by his promise to pay the debt over a period of time, is permitted to repudiate his promise and claim a satisfaction of his obligation because of such discharge from custody. It is the duty of the court to interpret statutes in such a way as to carry out the purpose of the legislature, and we are loath to believe that any legislature intended to establish any such doctrine as that for which the defendant now contends. We should bear in mind the words of Judge Shepley in *Spencer* v. *Garland*, 20 Me., 75, 76, where the defense to an action on a judgment was that the judgment had been discharged by the release of the debtor on giving a poor debtor's bond: "And if this action cannot be maintained the effect will be, that the defendants by giving a bond and neglecting to perform the condition without any payment extinguish the judgment, and deprive the plaintiffs of the right to collect the debt. The statute for the relief of poor debtors cannot receive such a construction."

The defendant asks us to revert to the common law rule which was based on the right of the creditor to take the body of his debtor and confine him in jail until the debt should be paid, a doctrine which regarded the custody of the body as so far a satisfaction of judgment that on the debtor's discharge the creditor lost all right to collect his debt. *Coburn* v. *Palmer*, 10 Cush., 273; *Jones* v. *Jones*, 87 Me., 117, 32 A., 779. It was a procedure which this court in *Jones* v. *Jones* has branded as involving degradation and punishment in distinction from the "humane system" set up by our statutes which permits imprisonment only for the purpose of obtaining discovery of the debtor's property. This archaic principle, condemned by the sound judgment of a more enlightened age, was swept aside by statute even before Maine became a state. Mass. Laws 1780-1807, Vol. I, 401: "An ACT for the Relief of poor Prisoners

who are committed by Execution for Debt." (Nov. 19, 1787).

A study of the various statutory enactments and the cases interpreting them convinces us that the defendant's contention cannot be sustained that the validity of the judgment depended solely on the release of the debtor on the creditor's "written permission."

The early Massachusetts statute cited above was enacted in 1787. It provided that a debtor might be released from custody on taking an oath that he had no property sufficient to support himself in jail. This act in principle modified the whole concept of imprisonment for debt. No longer was the creditor given the absolute right to keep his debtor in jail until the debt was paid; and, consequently, since that time arrest on an execution has no longer been regarded as a satisfaction of the debt. As a consequence a judgment remains valid and enforcible even though the debtor may have been released from custody. *Jones* v. *Jones, supra.* On February 5, 1820, just prior to the time when Maine became a separate state, Massachusetts enacted another statute which provided that the creditor should be liable for the support in jail of a debtor committed on mesne process or on an execution. Mass. Gen. Laws, 1799-1821, Ch. 94. There was also included a provision that the creditor might at any time discharge the debtor from custody and that such discharge should not operate to release the debtor from the debt. When therefore Maine became a state, these statutes were in effect here; and it was therefore established law here that a poor debtor might be released either on his taking the oath prescribed by the statute or by order of the creditor, and in neither case did such release operate to discharge the debt. Subsequently our legislature took care of the subject by statute. First came the act of March 21, 1821, Acts & Resolves 1820-1821, Ch. 122, Sec. 13. There was reenacted here the provision of the Massachusetts act which rendered the creditor liable for the support of the debtor in jail, subject to the right of the creditor to discharge the debtor from custody without

such discharge operating to release the debtor from the debt. Then in 1822, Acts & Resolves 1822-1831, Ch. 209, we find a general statute governing the release of poor debtors. Section 12 of this act is similar to that in the Massachusetts Act of 1787 providing for the discharge of a debtor from prison on his taking an oath that he had no property sufficient to support himself in jail. Section 18 of the act provided that a judgment obtained against such debtor should remain in force "notwithstanding such discharge." Section 27 read as follows:

"That whenever any creditor who may have caused his debtor to be arrested, or committed to prison on execution, shall think proper to discharge such debtor from such arrest or from prison, he shall have the right so to do, without affecting or discharging the judgment upon which such execution issued, by giving to the officer who made the arrest, or by leaving with the keeper of the gaol, a written permission for such debtor to go at large; and such discharge shall not operate to release the debtor from the debt and costs on which he was arrested or committed, but such debt and costs shall be and remain a legal claim against the goods and estate of such debtor; but the body of such debtor so released shall be, forever thereafter, exempted from arrest and imprisonment upon such execution and upon any execution which may be obtained in virtue of the judgment upon which such execution issued."

This is in substance the same provision as Rev. Stat. 1930, Chap. 124, Sec. 60, with which we are concerned in the present case. In determining whether as claimed by the defendant, the only method by which the debtor could be released without discharging the debt is by "written permission" of the creditor, we must remember that this statutory provision was not regarded as inconsistent with that already in effect providing for release generally at the direction of the creditor who was un-

willing longer to assume the obligation to pay the debtor's board. And significant also is the following section, 28, which provided that the jailer on his own initiative should release the debtor if the creditor did not provide for his board, and then there follows this proviso: "That such discharge shall not operate to release the debt or cost, on which such debtor was imprisoned." It would be illogical to hold that a discharge of a debtor on the oral direction of the creditor would amount to a satisfaction of the debt, if the creditor could accomplish the same result without discharging the debt merely by failing to provide for the support of the debtor in jail. In 1828, Acts & Resolves 1822-1831, Chap. 410, Sec. 3, the legislature specifically provided that where a debtor had been discharged on written permission of the creditor, or on taking the poor debtor's oath, the execution should be kept alive so that a levy might be made on it against the property of the debtor. The procedure for the relief of poor debtors was further amplified in 1831, Acts & Resolves 1822-1831, Chap. 520, and in 1835, Acts & Resolves 1832-1839, Chap. 195. The act of 1835, Sec. 12, contained the following specific provision:

> "That no release of any debtor or pensioner, (prisoner) under the provisions of this Act, shall affect or impair the right of the creditor to his debt or demand, but the same shall remain in full force against the property or estate of said debtor, and may be at any time satisfied out of any such property and estate, which may be discovered, and shall not by law be exempted from attachment and execution, in the same manner as if such discharge had not been made."

There was embodied in the revision of the statutes in 1841, Rev. Stat. 1841, Chap. 32, Sec. 33, the provision of the 1821 law that a creditor, unwilling to assume the obligation of a debtor's board, might release a debtor from prison without discharging the debt, also in Chap. 148, Sec. 42, the principle

of the 1835 law specifically providing for the validity of the debt, and in Chap. 148, Sec. 59, the provision of the 1822 law relating to release of the debtor on the "written permission" of the creditor. Section 60 of the same chapter incorporated the provision of the 1828 law under the terms of which the execution could be kept alive. In the same revision, Chap. 148, Sec. 19, we find the provision indicating that the purpose of arrest and imprisonment of a debtor on an execution is "for the purpose of obtaining a discovery of his property." This is now embodied in Rev. Stat. 1930, Chap. 124, Sec. 45. Such remained the state of the statutes until 1857. In the revision of that year there was dropped the general provision of the 1821 law relating to the right of the creditor to release his debtor without discharging the debt, also there was omitted the specific provision of the 1835 law that a discharge under the provision of the act for the "Relief of Poor Debtors" should not discharge the debt. Such is the essential history of the statutes on this subject.

Of prime importance in determining the legislative intent, in enacting in 1822 the clause providing for release of a debtor on the written permission of the creditor, is the relationship of that provision to the others which were in force with it. If, in the case of a release of a debtor with the consent of the creditor, it was the intent of the legislature that the judgment should remain valid only if such release was by the "written permission" of the creditor, what was the function of the law passed in 1821 providing without such qualification for the release of a debtor by the creditor without thereby releasing the debtor from the debt? Could these two provisions have remained together on the statute books for over thirty-five years, and have been reenacted together in 1841, if the clause relating to "written permission" means what the defendant now contends? If only by "written permission" could the debt be saved for the creditor, how can we account for section 28 of the act of 1822 which provides that the debt remains valid

if the debtor is discharged because of the creditor's refusal to provide for the debtor's board in jail?

We feel that a consideration of the origin and growth of the statutes governing this subject indicates without more the error of the defendant's interpretation. But beyond that the cases which discuss these various enactments support the construction which we place on the statute now in question.

In the first place we must be careful to distinguish between those cases which concern the validity of an execution and those which involve the validity of the judgment.

In *Miller* v. *Miller*, 25 Me., 110, the question was the validity of a levy made on an execution on which the debtor had been arrested, committed to prison, and subsequently discharged on taking the poor debtor's oath. Pub. Laws 1828, Chap. 410, Sec. 3, provided that where a debtor was discharged on written permission of the creditor or on taking the poor debtor's oath provided for in the statute, the execution might still be levied on the property of the debtor "by procuring the Sheriff or Gaoler to certify a true copy of such permission or certificate upon such execution." This is in substance the procedure set forth in Rev. Stat. 1930, Chap. 124, Sec. 61. The case holds true that, as there was no such return on the execution as required by the statute, the levy was void. The court points out the distinction between the act of 1835, Acts & Resolves 1832-1839, Chap. 195, Section 12, Rev. Stat. 1841, Chap. 148, Sec. 42, which provided for keeping the debt alive, and the act of 1828, Acts & Resolves 1822-1831, Chap. 410, Sec. 3, Rev. Stat. 1841, Chap. 148, Sec. 60, which to use the language of the opinion, page 114, "provided a remedy for the destruction of the life of the precept."

As has been pointed out there was omitted from the revision of the statutes in 1857 the provision of the act of 1835 providing specifically that a release of a debtor under the provision of the law for the Relief of Poor Debtors should not impair the right of the creditor to his debt. Just why this was omitted is

not clear, but probably it was because the whole policy of the law had so changed that arrest of the debtor followed by his release was no longer regarded as a satisfaction of the debt, and such an enactment was no longer regarded as necessary. This was certainly the view which Chief Justice Peters took when he wrote the opinion in *Jones* v. *Jones,* supra. This suit was an action of debt on a judgment. The defendant was arrested on an execution, gave a poor debtor's bond and was discharged on a disclosure. The court said, pages 118-119:

"It was contended at the trial of this case that no action can be maintained upon the judgment for the alleged reason that, by the provisions of the poor debtor chapter contained in the Revised Statutes of 1857, applicable hereto, the judgment was satisfied and discharged by the debtor's arrest and the giving of a bond for his release therefrom. The argument to sustain this position, which was sustained by the presiding judge, seems to have been that there was omitted from the statutes of 1857 an act which had existed in our statutes up to the date of that revision from the date of its passage in 1835 (see chap. 195, Laws of 1835), which act expressly provided that the discharge of a poor debtor upon his disclosure should not have the effect to impair any right which the creditor had to obtain satisfaction of his judgment out of the debtor's estate or property not exempted by law. The contention is that the supposed statutory omission revived the rights of the parties as they would have been at the old common law, under which an arrest of a debtor deprived the creditor of all other remedy for the collection of his debt.

"We cannot concede the correctness of any of these propositions. In the first place the law would be the same with or without the enactment of 1835. That act was a declaration merely of the law as it stood before, and this court virtually said so in its opinion in the case of *Spencer* v.

*Garland,* 20 Maine, 75. It necessarily resulted from our poor debtor laws that an arrest of a debtor and his subsequent discharge from arrest could not have the effect to bar the creditor from collecting his claim out of the debtor's property.

"The common law system and our statutory system on this subject are widely unlike. At the old common law an arrest upon an execution was largely designed as a punishment of the debtor for not paying his debt, and he could be held in imprisonment until he did pay it. On the contrary, our very humane system is one in no respect involving punishment or degradation, but seeks only to obtain a discovery of the debtor's property and its situation, in order that the creditor may be the better enabled to satisfy his judgment out of such property."

To be sure this was a release on disclosure but the broad language on which the court bases its opinion is applicable to any release howsoever obtained. For the opinion says in effect that no longer in this state is arrest and imprisonment regarded as a satisfaction of the debt; imprisonment now is solely for the purpose of obtaining a discovery of the debtor's property.

The case of *Moor* v. *Towle,* 38 Me., 133, supports the plaintiff's claim in the instant case. It was an action of debt on a judgment. The defendant pleaded that since the action was commenced, an alias execution was taken out on the original judgment, on which execution he was arrested and committed to prison, and there remained. The court held that the action could be maintained. The court said, page 133: "The commitment of the defendant on the execution did not discharge or annul the judgment on which it issued, nor discharge the action pending thereon."

It is suggested that this case is not in accord with *Clement* v. *Garland,* 53 Me., 427. Chief Justice Appleton who concurred in the opinion in the *Moor* case wrote the opinion in the

*Clement* case, and Judge Cutting concurred in both opinions. The cases are in no respect the same. The later case involves, not the validity of a judgment but of an execution and is in accord with the rule laid down in *Miller* v. *Miller,* supra.

See to the same effect as *Moor* v. *Towle, Clark* v. *Goodwin,* 14 Mass., 237, 239.

The cases in Massachusetts and in Vermont show significantly the general trend to disregard the old common law doctrine.

In *Raymond* v. *Butterworth,* 139 Mass., 471 (1 N. E., 126, 127), the court said, 471:

"The suit was upon a judgment rendered against the plaintiff in error and one Bemis. Bemis was arrested upon the execution issued thereon, and was afterwards, by order of the judgment creditor, released from arrest; and the plaintiff in error contends that this operated as a discharge and satisfaction of the judgment. Whatever may be the common law doctrine as to the effect of the commitment of a debtor on execution, it has long been the settled law of this Commonwealth that a judgment is not discharged by such commitment and a subsequent release from arrest, but remains in full force against the party committed, and may be satisfied by a levy on his property, and, *a fortiori,* it remains in force against a joint judgment debtor. *Cheney* v. *Whitely,* 9 Cush., 289."

In *Willard* v. *Lull,* 20 Vt., 373, the court said, 377:

"By the common law the body, when once arrested, is a *full* satisfaction of the debt. It is the same by our law, unless the body is discharged, with a promise to pay the debt on the part of the debtor; *Foster* v. *Collamer,* 10 Vt., 466; or unless the release is by operation of law. And at all events, the body, while held in confinement, is esteemed a *temporary satisfaction* of the debt. It does not operate as a release of collateral remedies, which are so far perfected

as not to depend upon any proceedings under the execution for their support."

As we have previously pointed out, the defendant claims that the release of a debtor from custody in any other way than is specifically authorized by statute discharges the debt. He falls back on the old common law rule and points out that Rev. Stat. 1930, Chap. 124, Sec. 60, authorizes the release on the written permission of the creditor, and that section 61 provides that if the statutory procedure is followed "the judgment may be revived or kept in force, with said execution, as judgments in other cases." Here it is contended are set forth, by inference at least, the conditions under which the judgment may be kept alive. This contention, not only ignores the fundamental principles which have been laid down in our own adjudications, but fails to take into consideration the history of the particular statutory provision. Section 61 of the present revision is a combination of sections 60 and 61 of Rev. Stat. 1841, Chap. 148. Section 59 of this chapter provided for release of a debtor on the written permission of the creditor; section 60 provided that the execution should be valid as against the property of the debtor, if written endorsement was made on the execution of a certificate showing that the debtor had been released in any of the modes specifically provided for by the statute; and section 61 provided that, whether such endorsement was made or not, the judgment should continue to be valid with the exception that no levy should be made thereafter on the body of the debtor. It is apparent therefore that the purpose of section 61 of our present law was merely to lay down a procedure by which, after the discharge of the debtor, the original execution or an alias execution might be enforced, no longer against the body, but against the property of the debtor. The reference to the judgment being "revived or kept in force" was merely declaratory of the law. *Jones* v. *Jones, supra.* It most certainly was not the intent of the legislature to imply

that a release of a debtor in any other way than by written permission would discharge the debt and the judgment.

The construction contended for by the defendant would do violence to legislative purpose as evidenced by all statutory enactments since Maine became a state, and particularly to the basic principle, Rev. Stat. 1930, Chap. 124. Sec. 45, that arrest on an execution is "for the purpose of obtaining a discovery" of the debtor's property. It would result, not in the furtherance of justice, but of injustice. It would set back the hands of the clock to a century and a half ago, when in a less humane age, a creditor was permitted to hold the body of his debtor until the debt was paid.

*Exceptions overruled.*

## Dissenting Opinion

MURCHIE, J.   I dissent from the foregoing opinion with very real reluctance because my conviction is as strong as that declared therein that the result does justice between party and party. A debtor who secures his release from imprisonment by a promise to pay which he fails to keep is entitled to no sympathetic consideration against his creditor's subsequent process seeking to reach his property. That fact notwithstanding, my belief is even more compelling that the issue as to whether this plaintiff be held to have forfeited his right to collect something less than $200 by his failure to use the safeguard authorized by R. S. (1930), Chap. 124, Sec. 60, pales into insignificance by comparison with that as to whether this Court will indulge in judicial legislation in his behalf.

All of our statute law pertinent to the present issue is contained, as at all times since the enactment of R. S. 1857, in a chapter entitled "Relief of Poor Debtors." Only two sections are directly involved and these are quoted in full in the majority opinion, R. S. (1930), Chap. 124, Secs. 60 and 61. That opinion asserts, however, that prior to 1857 legislation of con-

trolling force, contradictory of the word "written" as it appears in Section 60 and as it had appeared since 1822, was contained in R. S. (1841), Chap. 32, wherein the statutes dealing with paupers and their settlement and support were assembled. Why the provisions of Section 33 of that Chapter, authorizing a creditor subjected to process to recover the expense of maintaining his debtor, a pauper, in prison to release such debtor without formality, should have controlled the plain language of a statute dealing with imprisoned debtors who are not paupers, even while it appeared therein, is not disclosed in the opinion (nor is any attempt made to show how its priority effect continued after its repeal), but the declaration is definite that since Massachusetts Laws 1780-1807, Vol. 1, 401, "An Act for the Relief of poor Prisoners who are committed by Execution for Debt," enacted November 19, 1787, and Massachusetts Gen. Laws, 1799-1821, Chap. 94, enacted February 5, 1820, were in effect here when Maine became a state:

> "it was . . . established law here that a poor debtor might be released either on his taking the oath prescribed by the statute or by order of the creditor, and in neither case did such release operate to discharge the debt."

Our early legislatures must have taken a different view for the first enacted the provisions of Section 2 of the Massachusetts statute of February 5, 1820 in Stats. 1821, Chap. 122, Sec. 13, and the second purported in P. L. 1822, Chap. 209, Sec. 29, to repeal, *as respects this State*, that enacted November 19th, 1787. It was this P. L. 1822, Chap. 209, which first contained the provision authorizing a creditor to release his debtor imprisoned on execution for debt by a *written permission* without affecting his right to reach the debtor's property. It was this which first gave sanction by Maine legislation for the release of a debtor held on execution through the medium of a poor debtor's oath.

The opinion concedes, following declaration that estab-

lished law rendered all action unnecessary, that subsequent to our statehood "our legislature took care of the subject by statute." Five enactments are cited. The first is Chapter 122 of the Statutes of 1821, Sec. 13, but this relates solely to the release of an imprisoned debtor having the status of a pauper, and P. L. 1831, Chap. 520, deals only with the release of persons imprisoned for debt by operation of law, i.e., through disclosure and oath. It is only in two of the three remaining instances that the legislature dealt with the release of an imprisoned debtor by the voluntary action of his creditor, P. L. 1822, Chap. 209, Secs. 27 and 28 (the latter of which like Stats. 1821, Chap. 122, Sec. 13, applied only to paupers) and P. L. 1828, Chap. 410, Sec. 3, except that the fifth act cited, P. L. 1835, Chap. 195, provided again in Section 15 for the release of pauper debtors. The sections which dealt with paupers were long since repealed and it is manifest that in both cases where provision was made for the voluntary release of a debtor who was not a pauper the legislative intent was to impose a definite requirement that the releasing creditor who desired to retain the validity of his claim against the debtor's property must proceed by a *written permission*. This last law, like that of 1831, provided for releases other than by a creditor's consent, and Section 12, the "specific provision" of which is quoted in the opinion, in its original enactment, as in R. S. (1841), Chap. 148, Sec. 42 (when it last appeared in our statutes), bore not even a remote connection with such releases as were made by the voluntary action of a creditor. It is here more than anywhere else, in my view, that the majority opinion misconceives our legislation on this subject matter and the litigation that has arisen under it. The majority opinion quotes at length from *Jones* v. *Jones,* 87 Me., 117, 32 A., 779, including the statement that our law stood just the same, following the enactment of P. L. 1835, Chap. 195, as prior thereto and that it was unchanged when R. S. (1841), Chap. 114, Sec. 42 was omitted from the revision of 1857. There can be no doubt on either

point so far as the release of a debtor imprisoned on execution is accomplished by operation of law, but no release by volition of the creditor was involved in either the *Jones* case or in *Spencer et al.* v. *Garland,* 20 Me., 75, cited therein, where the distinction between such a release and one by operation of law was clearly drawn. Our Court has never recognized it as a principle of the common law that imprisonment of a debtor satisfied the debt on which he was imprisoned, but it has heretofore uniformly declared that at common law arrest or imprisonment coupled with voluntary release did that very thing. So long as creditors were holden to pay the board of the debtors they had caused to be confined who were not merely debtors but paupers, legislation authorized their release without formality and with the creditor's claim unimpaired so far as property was concerned, but there has never been a time when Maine has seen the semblance of sanction in legislation whereby an imprisoned debtor who was not a pauper might be orally released by his creditor without elimination of the debt except in the short interval between the statutory revisions of 1841 and 1857 and that semblance was more apparent than real.

R. S. (1841), Chap. 148, Sec. 61, reads:

> "Whether such indorsement be made on the executions or not, the judgment, on which the same was issued, may be revived or continued in force with the said exception, by an action of debt, or on scire facias to be brought, as in other cases of judgment."

There is no suggestion in the revision that this provision was contained in our 1821 statutes or that it was founded on legislation enacted between 1821 and 1840. Nor was it. If R. S. (1841), Chap. 148, Sec. 61 was still in effect, it might be claimed that the present decision is rendered under it because of the express recital that regardless of the indorsement required by what is now R. S. (1930), Chap. 124, Sec. 61, or the lack of it, a judgment might be revived or kept in force, although the

common sense interpretation of it would seem to be that provided the facts were such as to make indorsement within the statute proper, the lack thereof would not be fatal. In the present case the deficiency is not the lack of an endorsement but the fact that no *written permission* was given for the release. The creditor did not fail to secure the formality required by Section 61. He failed to meet the condition requisite imposed by Section 60 which would have entitled him to obtain such an indorsement. Interpretation of that section, however, cannot be said to be involved for if we assume that it became a part of our law by the action of the revisors in 1841 in writing it into the chapter without the sanction of earlier legislation, we must grant that it was repealed with equal efficiency when the revisors in 1857, by implication at least, restricted the availability of keeping the judgment alive to those cases where a certificate of the cause of the debtor's discharge was in fact indorsed on the execution, or where the facts would justify an indorsement, if requested, R. S. 1857, Chap. 113, Sec. 34.

The decision can draw no present support from recital in the opinion that:

> "It would be illogical to hold that a discharge of a debtor on the oral direction of the creditor would amount to a satisfaction of the debt, if the creditor could accomplish the same result without discharging the debt merely by failing to provide for the support of the debtor in jail"

because the alternative method of discharging a debtor has not been available since the statute revision of 1857. It may in fact have been unavailable since the enactment of P. L. 1842, Chap. 23, which made written complaint by the imprisoned debtor that he was unable to pay the expenses of supporting himself in prison a prerequisite to demand on the creditor therefor. I quote the comment, however, not merely to show the antiquity of its availability, but to record definitely that if it implies assumption that this Court may pass upon the logic

of legislation generally or interpret R. S. (1930), Chap. 124, Sec. 60, as if the word "written" did not appear therein because the requirement of a writing would be *illogical*, I am not only unable but entirely unwilling to subscribe thereto. With the logic or the wisdom of governmental policy as fixed by the legislative department of government, the judicial department has no concern and it should avoid with scrupulous care even the semblance of interference.

The foregoing is based on assumption that the majority opinion is grounded in an interpretation of R. S. (1930), Chap. 124, Sec. 60, which disregards entirely the word "written." Such is the distinct trend of the language used until attempt is made to distinguish judgments from the executions issued thereon. If this attempted distinction is presented as an alternative ground, it seems to me equally untenable although it may be said for it that it involves no attempt at such a bold usurpation of legislative power as definitely ignoring the statutory word "written." It is accomplished by reference to five cases decided in this Court and the grouping of them into two classes. *Miller et al.* v. *Miller,* 25 Me., 110, and *Clement et al.* v. *Garland,* 53 Me., 427, are said to involve the validity of executions and the claim is asserted that R. S. (1930), Chap. 124, Sec. 61, relates to nothing more, whereas *Spencer et al.* v. *Garland,* supra, *Moor* v. *Towle,* 38 Me., 133, and *Jones* v. *Jones,* supra, are declared to have been decided on the ground that they presented actions of debt on the judgments involved. It ought to be sufficient answer to this claim of distinction so far as the *Spencer* and *Jones* cases are concerned that it was not drawn in either of them and that neither presented facts showing the release of an imprisoned debtor by the voluntary action of his creditor. Neither was decided on the principle that an action of debt would lie on a judgment under which an execution, earlier used to imprison the debtor, had lost its force as a precept. Both declared that arrest followed by discharge through the filing of a bond left the creditor free to proceed

against the debtor's property. P. L. 1835, Chap. 195, was construed in both cases and what is now R. S. (1930), Chap. 124, Sec. 60 in the latter. This would have been entirely unnecessary if its provisions were applicable only to executions, but it may be said further that our court as constituted when all of these decisions were handed down drew no distinction whatsoever between a judgment and an execution issued thereon. In the *Spencer* case it is stated that a voluntary discharge "might operate as a satisfaction of the judgment" (not an execution), and in the *Jones* case attention is centered on the contention that "the judgment was satisfied" (not the execution). The same is true of the *Miller* and *Clement* cases, both of which refer to the common law principle concerning "satisfaction of the debt." The *Moor* case it should be noted deals with an action of debt on a judgment instituted before the debtor was imprisoned.

The statements quoted from our own decisions all relate to the common law principle regulating the rights of a creditor against his debtor after resort to imprisonment in an attempt to collect his debt, which is the very situation presented by the instant case and with which the statute interpreted was intended at the time of enactment to deal. Our problem most certainly is determination of the extent to which the common law has been changed by legislation, and in the *Miller* case the view was recorded that since the legislature had provided a remedy for the common law principle developed when there was no machinery by which an imprisoned debtor might secure his release, it would be "improper for the Court to attempt to provide" therefor in some other manner.

Massachusetts and Vermont have modified the rule of common law in manners not consistent with each other or with that applicable in Maine. Neither has a law comparable with our own R. S. (1930), Chap. 124, Sec. 60. In Massachusetts it has been the law "ever since debtors were permitted to be discharged from imprisonment on taking the poor debtors' oath"

that the judgment remains in full force. *Cheney et al.* v. *Whitely,* 9 Cush., 289; *Raymond* v. *Butterworth,* 139 Mass., 471, 1 N. E., 126. The first of these cases records that a judgment creditor may sue on his judgment "even whilst the debtor is in confinement . . . discharging him from imprisonment within seven days." Vermont has made special provision for the very situation presented in the instant case. There it is provided by statute that the release of an imprisoned debtor by his creditor upon a "promise to pay the debt" has no effect thereon. *Willard* v. *Lull,* 20 Vt., 373. These decisions of the courts of our neighbor jurisdictions are all cited in the majority opinion. The Vermont case also declares:

> "if it were not for the statute, he (the creditor) would have no farther remedy; and with that, he can only have the remedy which the statute gives."

At common law the plaintiff herein having caused his debtor to be imprisoned on execution, and given consent to that debtor's release, was barred from later attempt to collect either on the execution used to effect the imprisonment or on the judgment under which the execution was issued. The legislature has said, in the only enactment dealing with such a situation which stands unrepealed upon our statute books, that if the discharge of the debtor was accomplished by a *written permission* the effect is the same as if the discharge had been through disclosure. No further or other provision applicable to the circumstances has been contained in our law for more than four score years. It seems to me to be pure fiction to say either that no legislation is necessary to authorize a creditor in the position of this plaintiff to maintain an action of debt on a judgment already used, via an execution issued thereon, to imprison his debtor, or that R. S. (1930), Chap. 124, Sec. 60 (the provisions of which trace back to P. L. 1822, Chap. 209, Sec. 27 and P. L. 1828, Chap. 410, Sec. 3) may be interpreted, because of inconsistency with a law or laws effective in Massa-

chusetts when this State was separated from it, or with some other provision enacted concurrently (which could relate only to the 1822 law where Sec. 28 authorized the release of a pauper without formality), or because any law, especially any law since repealed, was on our statute books when it was originally enacted, as if the word "written" did not appear therein.